**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DAVID KLEINBERG, | ) | 3:25-CV-00661 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JASON J. GUERRERA and GARRETT | ) | |
| OSTERFIN, | ) | July 2, 2026 |
| *Defendants*. | | |

## <u>RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Sarala V. Nagala, United States District Judge.

Plaintiff David Kleinberg, proceeding *pro se*, commenced this 42 U.S.C. § 1983 action against two officers of the East Hartford Police Department, Defendants Jason J. Guerrera and Garrett Osterfin (also known as Garrett Ostafin), challenging their conduct in connection with Plaintiff's arrest and detention between January 28, 2023, and January 30, 2023. *See* Compl., ECF No. 1-1 at 3–113. Plaintiff alleges that Defendants arrested him without legal basis, fabricated criminal charges, suppressed exculpatory evidence, subjected him to inhumane conditions of confinement, and pursued an unsubstantiated risk protection order, among other claims. Plaintiff's complaint alleges claims for false imprisonment, abuse of process and malicious prosecution, assault and battery/excessive force, "suppression of evidence and interference with a judicial proceeding," slander, libel and defamation, and intentional infliction of emotional distress ("IIED"). *Id.* at 7–8.

Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiff opposes this motion. Separately, Plaintiff has filed a motion for summary judgment on all claims. For the reasons described herein, the Court grants Defendants' motion to dismiss, with leave to amend the excessive force claim and the

unconstitutional conditions of confinement claim that the Court construes the complaint as making. As the complaint is dismissed in full, the Court denies Plaintiff's pending motion for summary judgment made on all claims, without prejudice to resubmission at a later juncture.

## I.    FACTUAL BACKGROUND

### A.    The Complaint

Plaintiff's complaint, originally filed in the Connecticut Superior Court  and removed to federal court, challenges Defendants' conduct in connection with his arrest and subsequent detention in January of 2023.  *See generally* ECF No. 1-1.

Plaintiff alleges that on January 28, 2023, Defendant Guerrera arrested him without a warrant and without probable cause at his apartment in East Hartford, Connecticut for disorderly conduct, in violation of Conn. Gen. Stat. § 53a-182.  *Id.* ¶¶ 5, 12.  Plaintiff alleges that Defendant Osterfin removed him from his apartment while he was dressed in a t-shirt and sleep pants, and denied him warm clothing.  *Id.* ¶ 14.  Plaintiff also alleges that he was placed in excessively tight handcuffs, which caused bruising and pain.  *Id.* ¶ 25.

Plaintiff alleges that Guerrera later charged him with an additional offense—a felony charge of assault in the second degree, in violation of Conn. Gen. Stat. § 53a-60.  *Id.* ¶ 12.  Plaintiff alleges that he was charged with this felony despite the fact that the victim refused medical attention, which Plaintiff contends negated the element of "serious injury" for that offense.  *Id.* ¶¶ 12, 18.

From January 28, 2023, to January 30, 2023, Plaintiff was detained in a cell, where he was allegedly deprived of sleep due to the lights being left on, and only offered fast food which he could not eat because it causes him digestive issues.  *Id.* ¶ 15. Plaintiff alleges that these conditions of confinement were designed to coerce and punish him, and that they violated his constitutional rights.  *Id.*

2

At the January 30, 2023, bond hearing related to the criminal charges, the presiding judge set Plaintiff's bond for $10,000, prohibited him from contacting the victim, and notated in a written order "mental health [and] medication" concerns, which Plaintiff contends was unfounded because he does not have any psychiatric or substance abuse disorders. *Id.* ¶¶ 17, 20, 22. Moreover, Plaintiff alleges that Defendants Guerrera and Osterfin suppressed exculpatory evidence and interfered with judicial proceedings by refusing to consider his cross-complaint, which set forth his version of events related to the incident. *Id.* ¶¶ 13, 26.

Plaintiff further alleges that on February 1, 2023, Defendants Guerrera and Osterfin filed with the state court a risk protection order application and affidavit, falsely claiming that he assaulted the victim and posed a danger to him. *Id.* ¶ 16. Specifically, Defendants allegedly stated that he assaulted the victim with a fork, plate and frying pan and threatened to kill him. *Id.* Plaintiff also alleges that Guerrera described him as a "conspiracy theorist" and "anti-government," which negatively influenced the Court's perception of him. *Id.*

According to the complaint, Plaintiff's criminal charges were ultimately dismissed on February 11, 2025. *Id.* ¶ 24.

Plaintiff alleges that Guerrera's alleged misconduct was motivated by professional frustrations stemming from a denial of a promotion in 2022, as reported in a news article. *Id.* ¶¶ 4, 20. Additionally, Plaintiff alleges that Guerrera has a documented pattern of police misconduct. He references a prior federal lawsuit, *Rotbergs v. Guerrera*, Case No. 3:10-CV-01423 (D. Conn.) ("*Rotbergs*"), wherein Guerrera was sued for, *inter alia*, malicious prosecution and arresting an individual without a warrant. *Id.* ¶¶ 4, 11, 19. According to Plaintiff, this history substantiates his claims in this case. *Id.* ¶ 21.

As a result of these alleged events, Plaintiff alleges that he lost housing, personal property and an emotional support animal. *Id.* ¶ 22. Plaintiff also alleges that he incurred hotel expenses totaling $32,000, and experienced emotional distress and reputation damage. *Id.* As relief, Plaintiff seeks compensatory and punitive damages, as well as the return of his personal property and animal. *Id.* ¶ 29.

Plaintiff annexes more than one hundred of pages of exhibits to his complaint, including a memorandum of law in support of his claims, *id.* at 10–23; the police report concerning the underlying incident, *id.* at 31–35; an "affidavit of rebuttal" in response to the police report, which the Court construes as the cross-complaint referenced in Plaintiff's complaint, *id.* at 24–30; a court order granting Guerrera's motion for summary judgment in *Rotbergs*, *id.* at 38–52; a state court order related to the January 30, 2023, bond hearing, *id.* at 36–37; the risk protection order affidavit and application and related court orders, *id.* at 57–68; several news articles concerning wrongful conviction cases in the State of Connecticut and Guerrera's purported police misconduct*, id.* at 53–56, 71–98; and certain of Plaintiff's driving and medical records, *id.* at 99–113.[1]

B. Plaintiff's Claims

Plaintiff brings several claims. In Count One, he asserts Section 1983 and common law claims for false imprisonment based on the alleged unlawful arrest, in violation of the Fourth Amendment and state law. In Count Two, Plaintiff brings a common law claim for abuse of process, based on Defendants' alleged unlawful arrest, failure to consider his cross-complaint, and the imposition of the felony charge. Plaintiff also appears to assert a malicious prosecution claim,

---

[1] While the Court will consider the documents annexed to Plaintiff's pleading, it will not consider the exhibits attached to his opposition to Defendants' motion to dismiss (many of which are duplicates of documents already provided). *See Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (stating that when a district court evaluates a Rule 12(b)(6) motion, it ordinarily does not look beyond the complaint and its attached documents).

as he alleges that he was "maliciously prosecuted."[2]  In Count Three, Plaintiff brings common law claims of assault and battery, alleging that Defendants placed him in excessively tight handcuffs. In Count Four, Plaintiff brings a claim of "suppression of evidence and interference with a judicial proceeding" based on Defendants' alleged failure to consider his cross-complaint.  In his opposition to Defendants' motion to dismiss, Plaintiff clarifies that this claim is brought pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  In Count Five, Plaintiff brings common law claims of slander, libel and defamation based on Defendants' alleged circulation of the bond order noting "mental health [and] medication" concerns.  Finally, in Count Six, Plaintiff brings a common law claim of IIED.  The Court also construes Plaintiff's complaint to raise a claim of unconstitutional conditions of confinement, in violation of the Fourteenth Amendment.

Defendants have moved to dismiss the complaint in full.  Defs.' Mot. to Dismiss, ECF No. 19.  Plaintiff opposes this motion.  Pl.'s Opp. Br., ECF No. 32.  Additionally, while the motion to dismiss was pending, Plaintiff filed a motion for summary judgment.  ECF No. 47.  The Court suspended Defendants' deadline to respond to the motion for summary judgment until after it resolves the pending motion to dismiss.  ECF No. 49.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as

---

[2] Plaintiff's opposition to Defendants' motion to dismiss also suggests that he intends to assert a malicious prosecution claim.  Therein, Plaintiff contends that he has plausibly pleaded a malicious prosecution claim (and does not make any references to his abuse of process claim).  *See* ECF No. 32 at 1.  Defendants argue only that Plaintiff fails to state a claim for malicious prosecution; they do not address his abuse of process claim.  Since Plaintiff proceeds *pro se*, the Court assesses the factual allegations in Count Two under both the malicious prosecution and abuse of process legal standards.

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties.  It is true that courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted).  But at the same time, a *pro se* complaint must meet the basic

pleading standards outlined above to survive a motion to dismiss. *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

## III.    DISCUSSION

Defendants' motion to dismiss is granted.  First, the Court concludes that Plaintiff has plausibly pleaded the personal involvement of Defendant Osterfin.  Nonetheless, the Court concludes that Plaintiff's claims of false imprisonment, malicious prosecution, abuse of process, suppression of evidence, slander, libel and defamation, IIED, and unconstitutional conditions of confinement must be dismissed.  Finally, as the Court has dismissed all of Plaintiff's claims and grants leave to amend as to only two claims, the Court denies as moot Plaintiff's motion for summary judgment.

### A.  Personal Involvement of Defendant Osterfin

As an initial matter, the Court concludes that Plaintiff has plausibly pleaded the personal involvement of Defendant Osterfin, at least with respect to his false arrest, abuse of process, malicious prosecution, and *Brady* claims.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  "Pleadings that (1) 'fail[] to differentiate among the defendants, alleging instead violations by the defendants'; (2) 'fail[] to identify which defendants were alleged to be responsible for which alleged violations,' or; (3) 'provide no factual basis to distinguish [the defendants'] conduct' may not meet this standard." *Arias v. East Hartford*, No. 3:20-CV-00895 (JHC), 2021 WL 3268846, at *3 (D. Conn. July 30, 2021) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order)).  Such claims may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because they "fail to meet the requirement in Federal Rule of Civil Procedure

that 'a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Id.*  Due to this fair notice requirement, complaints that rely on "group pleading" and "fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." *Gonzalez v. Yepes*, No. 3:19-CV-00267 (CSH), 2019 WL 2603533, at *7 (D. Conn. June 25, 2019) (quoting *Adamou v. Cty. of Spotsylvania, Va.*, No. 12-CV-7789 (ALC), 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016)); *see also Atuahene*, 10 F. App'x at 34.

The Court rejects Defendants' arguments that Plaintiff has failed to plausibly allege Defendant Osterfin's personal involvement in the alleged constitutional violations brought pursuant to Section 1983 and that the complaint relies on impermissible group pleading.  The Court acknowledges that portions of Plaintiff's complaint refer generally to "Defendants" when describing the alleged misconduct, and that most of Plaintiff's grievances are directed toward Defendant Guerrera.  But in other sections of the complaint, Plaintiff identifies actions allegedly taken by Defendant Osterfin himself.  Specifically, Plaintiff alleges that Osterfin refused to consider his cross-complaint, *see* ECF No. 1-1 ¶ 13, which forms the factual basis for his abuse of process, malicious prosecution and suppression of evidence claims.  Plaintiff further alleges that Osterfin removed him from his apartment in connection with the arrest, *id.* ¶ 14, which is relevant to his false arrest claim.  Finally, Plaintiff also alleges that Osterfin, along with Guerrera, filed with the state court a risk protection affidavit and application, *id.* ¶ 16.  These allegations are different from the type of undifferentiated group pleading routinely rejected by courts in this circuit.  Liberally construing the complaint, the Court finds that it identifies specific acts allegedly undertaken by Osterfin and provides a factual basis from which the Court may reasonably infer his direct participation in the challenged conduct.  Thus, Plaintiff has not failed to allege Osterfin's

personal involvement in the alleged constitutional violations.  Nevertheless, as discussed below, Plaintiff's substantive claims fail.

 B. Count One:  False Imprisonment

First, the Court concludes that Plaintiff has not plausibly pleaded a claim of false imprisonment under either federal or state law.  In evaluating claims of false imprisonment, federal courts look to the law of the state in which the imprisonment occurred.  *Kaplan v. Cnty. of Orange*, 528 F. Supp. 3d 141, 169 (S.D.N.Y. 2021); *Stanley v. Muzio*, 578 F. Supp. 2d 443, 447 (D. Conn. 2008).  In Connecticut, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another."  *Green v. Donroe*, 186 Conn. 265, 267 (1982).  "Any period of such restraint, however brief in duration, is sufficient to constitute a basis for liability."  *Id.*  However, the existence of probable cause to arrest is a "'complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

Probable cause exists when officers have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Weyant,* 101 F.3d at 852.  "The validity of an arrest does not hinge upon an ultimate finding of guilt or innocence . . . and the court should look to the actual information that the arresting officer had at the time of the arrest to determine whether or not there was probable cause."  *Scott v. Cnty. of Nassau*, No. 94-CV-4291, 1998 WL 874840, at *3 (E.D.N.Y. Dec. 11, 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967) and *O'Neil v. Town of Babylon*, 986 F.2d 646, 649–50 (2d Cir. 1993)).  Probable cause is a "fluid concept," and must be assessed based on "the totality of the circumstances."  *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal citation omitted).  Moreover,

"[w]hen information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).

Additionally, Conn. Gen. Stat. § 54-1f(a) authorizes police officers to arrest an individual without a warrant, "for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others." Warrantless arrests for felonies and misdemeanors are valid if they are supported by probable cause. *See State v. Johnson*, 286 Conn. 427, 435 (2008) (felonies); *State v. Santiago*, 224 Conn. 494, 498 (1993) (misdemeanors).

Here, Plaintiff alleges that he was arrested without a warrant and without probable cause for two offenses: (i) disorderly conduct (Conn. Gen. Stat. § 53a-182); and (ii) assault of a nonparty in the second degree, a felony (Conn. Gen. Stat. § 53a-60).[3] The Court construes Plaintiff's false imprisonment claim as applying to both charges.

Connecticut's disorderly conduct statute provides, in relevant part, that "a person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person," without the knowledge or consent of such other person and while such person is inside a dwelling. Conn. Gen. Stat. § 53a-182(a).

Connecticut's assault statute provides, in relevant part, that a person is guilty of assault in the second degree when "with intent to cause serious physical injury to another person, the actor causes such injury to such person or to a third person." Conn. Gen. Stat. § 53a-60(a)(1). While

---

[3] While Plaintiff's complaint could be read to suggest that the felony second degree assault charge was added at some point *after* the initial disorderly conduct misdemeanor arrest, *see* ECF No. 1-1 ¶ 12, the police report attached to the complaint states that Plaintiff was arrested for both offenses, and for threatening in the second degree, on January 28, 2023. *Id.* at 31.

10

Connecticut defines physical injury as mere "impairment of physical condition or pain," *serious* physical injury means "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ." Conn. Gen. Stat. § 53a-3 (3), (4).

Based on the present record, the Court finds that the facts and circumstances known to Defendants at the time of the January 28, 2023, arrest provided them with probable cause to arrest Plaintiff for both charges. Consequently, the fact that Plaintiff was arrested without a warrant does not affect the validity of the arrest.

With respect to the assault charge, the police report annexed to Plaintiff's complaint includes the victim's statement detailing how Plaintiff assaulted him. Specifically, the victim reported that Plaintiff grabbed him by his arms, shoved him out of the kitchen, grabbed his legs causing him to fall down the stairs, grabbed him by the head and slammed it against the stairs and the wall, attempted to choke him, and hit him on his head with a frying pan in their home. *See* ECF No. 1-1 at 32. As Plaintiff does not allege any facts or circumstances that raise doubt as to the victim's veracity, it was appropriate for Defendants to rely on the victim's account. *See Curley*, 268 F.3d at 70.

Additionally, the police report reflects Defendant Guerrera's own observations of a "medium sized bump" on the victim's head and scratches and bruising on his neck and chest. *Id.* Although Plaintiff alleges that the victim declined medical treatment—which, in Plaintiff's view, negates the "serious physical injury" element for an assault charge—this allegation, standing alone, does not demonstrate a lack of probable cause. There is no requirement in Conn. Gen. Stat. § 53a-60 that a victim seek medical treatment to establish a serious physical injury. Nor does Plaintiff cite to any authority supporting the proposition that a victim's decision to decline medical

11

treatment, standing alone, negates the existence of a serious physical injury.  Without opining on whether the victim in fact suffered a serious physical injury, the Court finds that the victim's report of the violent attack, coupled with the visible corroborating injuries, were sufficient to permit Defendants to believe that the circumstances warranted an arrest for second degree assault.

These considerations are also sufficient to demonstrate that probable cause existed for the disorderly conduct charge, as they show that Plaintiff engaged in fighting and violent, threatening behavior toward the victim without his consent in their home.  Thus, the Court finds that the factual circumstances were sufficient for Defendants to believe at the time of the arrest that Plaintiff had committed the crimes of assault and disorderly conduct.  As a result, Plaintiff's false imprisonment claim, whether brought under § 1983 or Connecticut law, must be dismissed.

C.  Count Two:  Malicious Prosecution

Plaintiff has likewise failed to plausibly plead a malicious prosecution claim in Count Two. To bring a malicious prosecution claim under Section 1983, "a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (quoting *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002)).  To state a malicious prosecution claim under Connecticut law, the plaintiff must show "(1) the defendant initiated or continued criminal proceedings against the plaintiff"; (2) "the criminal proceeding terminated in favor of the plaintiff"; (3) "the defendant acted without probable cause"; and (4) "the defendant acted with malice." *Id.* at 420.  Additionally, to demonstrate the requisite Fourth Amendment violation, the plaintiff must show "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000).

Here, Defendants do not dispute that Plaintiff has shown a sufficient post-arraignment liberty restraint, as necessary to demonstrate a Fourth Amendment violation in this context. Defendants also do not contest that Plaintiff has plausibly alleged that criminal proceedings were initiated against him and that they were ultimately terminated in his favor. Defendants only challenge the latter two elements of Plaintiff's malicious prosecution claim, arguing that he has failed to plausibly allege that they acted without probable cause and with malice in connection with the assault charge. The Court agrees with Defendants.

### 1.  Probable Cause

Courts evaluate probable cause for false arrest and malicious prosecution claims based on essentially the same legal framework, except that the inquiry for probable cause in the malicious prosecution context requires an evaluation of facts known at the time the prosecution is initiated, rather than at the time of the arrest. *See Jimenez v. City of New York*, No. 21-CV-6133 (RPK) (JRC), 2024 WL 198319, at \*5 (E.D.N.Y. Jan. 18, 2024). "Once probable cause to arrest is established, a claim for malicious prosecution is barred unless plaintiff can demonstrate that at some point subsequent to the arrest, additional facts came to light that negated probable cause." *Sachs v. Cantwell*, No. 10-CV-1663 (JPO), 2012 WL 3822220, at \*12 (S.D.N.Y. Sept. 4, 2012) (quoting *Smith v. City of New York,* No. 04 Civ. 3286, 2010 WL 3397683, at \*9 (S.D.N.Y. Aug. 27, 2010)); *see also Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir. 1996) ("even when probable cause is present at the time of the arrest, evidence could later surface which could eliminate probable cause."). In other words, probable cause "dissipates when 'the groundless nature of the charges [are] made apparent by the discovery of some intervening fact.'" *Sachs*, 2012 WL 3822220, at \*12 (quoting *Lowth*, 82 F.3d at 571).

Here, Plaintiff primarily bases his malicious prosecution claim on the imposition of the assault charge, contending that Defendants charged him with this offense to cover up the initial

unlawful arrest.  Plaintiff also reiterates that the fact that the victim refused medical attention negated the element of serious physical injury for that offense, and that Defendants failed to consider his cross-complaint.  The Court has already determined above that Defendants had probable cause to *arrest* Plaintiff for both offenses, and that the victim's denial of medical treatment did not negate the validity of the arrest for assault.[4]  It likewise finds that Defendants had probable cause to initiate proceedings against Plaintiff for the assault charge based upon the same factual allegations, as Plaintiff does not allege any additional facts demonstrating that an intervening event occurred between the time of his arrest and the start of criminal proceedings, as necessary to eliminate a finding of probable cause.  This failure alone is fatal to Plaintiff's claims. *See Cornelio v. Conn.*, 32 F.4th 160, 178–79 (2d Cir. 2022) ("The existence of probable cause is a complete defense to a malicious prosecution claim.").

Even if the Court construes Plaintiff's allegation that Defendants failed to consider his cross-complaint and thereby interfered with the criminal proceedings as an intervening event, this allegation does not defeat probable cause for purposes of a malicious prosecution claim.  It is well-settled that once police officers have probable cause to arrest, they need not "explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see also Panetta,* 460 F.3d at 395–96 ("The fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause.") (internal citations and quotation marks omitted).  Police officers are "neither required nor allowed to sit as prosecutor, judge or jury.  Their function is to apprehend

---

[4] The Court also notes that based on the police report annexed to Plaintiff's complaint, dated January 28, 2023, it appears that the victim's denial of medical treatment was known to Defendants at the time of the arrest. *See* ECF No. 1-1 at 37–38.  Thus, this factor cannot be considered an intervening event for purposes of Plaintiff's malicious prosecution claim.

those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Id.* at 396 (quoting *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989)).  Thus, the Court finds that Defendants were not obligated to consider Plaintiff's cross-complaint upon finding that probable cause existed for the initial arrest.  Plaintiff has therefore failed to demonstrate that probable cause dissipated between his initial arrest and the initiation of proceedings to sustain his malicious prosecution claim.

### 2.  Malice

The Court also concludes that Plaintiff has not alleged facts sufficient to demonstrate that Defendants acted with malice—that is, for a purpose other than that of bringing an offender to justice, *see McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982)—in pursuing the assault charge. "A party may demonstrate malice by showing that a prosecution was undertaken 'from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff,' including initiating proceedings without probable cause." *Turner v. Boyle*, 116 F. Supp. 3d 58, 85 (D. Conn. 2015) (quoting *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996)).  Here, Plaintiff's complaint does not allege any facts from which the Court can infer that Defendants commenced proceedings based on any improper motives or without probable cause.  Accordingly, Plaintiff's malicious prosecution claim fails.

### D.  Count Two:  Abuse of Process

The Court finds that Plaintiff has likewise failed to allege facts sufficient to state an abuse of process claim in Count Two.  "The torts of malicious prosecution and abuse of process are closely allied.  While malicious prosecution concerns the improper issuance of process, the gist of abuse of process is the improper use of process after it is regularly issued." *Boyd v. City of Hartford*, No. 3:19-CV-00895 (KAD), 2022 WL 3646168, at *7 (D. Conn. Aug. 24, 2022) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).  "Under Connecticut law, 'an action for

abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed.'" *Boyd*, 2022 WL 3646168, at *7 (quoting *Coppola Const. Co. v. Hoffman Enter. Ltd. Partnership*, 157 Conn. App. 139, 191 (2015)). If the process is used for its intended purpose, there is no liability for abuse of process, even if use of the process for its intended purpose is accompanied by an "incidental motive of spite or an ulterior purpose of benefit to the defendant." *Id.* Thus, to prevail on an abuse of process claim, a plaintiff must show: "(1) the defendant instituted proceedings or process against the plaintiff and (2) the defendant used the proceedings primarily to obtain a wrongful purpose for which the proceedings were not designed." *Id.* (quoting 1 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 8:02).

Here, Plaintiff has not plausibly alleged that Defendants used the proceedings to accomplish a wrongful purpose. Plaintiff asserts that Defendants instituted proceedings against him to harass him, but there are no facts alleged in the complaint to support that contention. To the contrary, as discussed above, the record reflects that the assault charge was supported by probable cause and Defendants were under no legal obligation to consider Plaintiff's cross-complaint before prosecuting that charge. Furthermore, Plaintiff's reference to Defendant Guerrera's purported history of police misconduct, a prior federal lawsuit, and his denial of a promotion do not salvage his claim. Even assuming that these allegations are true, Plaintiff alleges no nonconclusory facts connecting these events to the proceedings at issue here or to otherwise demonstrate that Defendants employed the judicial process for an improper purpose. Thus, Plaintiff's abuse of process claim is dismissed.

E. Count Three:  Assault & Battery and Excessive Force

In Count Three, Plaintiff brings common law claims of assault and battery based on painful handcuffing.  Granting Plaintiff the special solicitude owed to him as a *pro se* litigant, the Court also construes Count Three to raise a § 1983 claim for excessive force.

Courts have recognized that the essential elements of a Section 1983 excessive force claim and state law assault and battery claims are substantially identical.  *See Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (summary order) ("[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical.") (cleaned up and quoting *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991)).  To state a claim for assault and battery in the law enforcement context, Plaintiff must allege that "defendants applied force or violence to [him] and that the application of force or violence was unlawful." *Evans v. Dep't of Corr.*, No. 3:22-CV-74 (OAW), 2025 WL 2374064, at *5 (D. Conn. Aug. 14, 2025) (quoting *Williams v. Lopes*, 64 F. Supp. 2d 37, 47 (D. Conn. 1999)).  As Defendants do not dispute that they were acting under color of state law at the relevant time, and as the elements of a § 1983 excessive force claim are otherwise identical to a state law assault and battery claim, the Court thus analyzes Plaintiff's claim based on excessive handcuffing under Section 1983's legal framework.

Claims alleging the use of excessive force against law enforcement officers are generally analyzed under the Fourth Amendment's "reasonableness" standard.  *Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 306 (D. Conn. 2009); *Graham v. Connor*, 490 U.S. 386 (1989).  When evaluating whether police officers have employed excessive force in the arrest context, "courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or

17

motivation.'"  *Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham,* 490 U.S. at 397).

"Although handcuffs must be reasonably tight to be effective . . . overly tight handcuffing can constitute excessive force."  *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (collecting cases).   District courts in this circuit had developed a three-prong test to evaluate an excessive force claim based on tight handcuffing.  Courts had considered: (1) whether the handcuffs were "unreasonably tight"; (2) whether the "defendants ignored the [plaintiff's] pleas that the handcuffs were too tight"; and (3) the "degree of injury to the [plaintiff's] wrists."  *Id.* at 468 (emphasis omitted) (citing *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005)).  But the Second Circuit later made clear that, while these factors may "prove useful" in assessing the viability of a handcuffing-based excessive force claim, the "court's reasonableness analysis is not limited to a factual checklist," because the "'test of reasonableness under the Fourth Amendment . . . is not capable of precise definition or mechanical application.'"  *Cugini v. City of New York*, 941 F.3d 604, 612–13 (2d Cir. 2019) (quoting *Graham*, 490 U.S. at 396).  Thus, "a plaintiff asserting a claim for excessive force need not always establish that she alerted an officer to the fact that her handcuffs were too tight or causing pain.  The question is more broadly whether an officer reasonably should have known during handcuffing that his use of force was excessive.  A plaintiff satisfies this requirement if either the unreasonableness of the force was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both."  *Id.* at 613.

Here, Plaintiff merely alleges that Defendants "excessively handcuffed" his wrists and that he experienced bruising and pain.  *See* ECF No. 1-1 ¶ 25.  But even assuming *arguendo* that the handcuffs were excessively tight, there are no facts alleged in the complaint suggesting that

18

Defendants knew or reasonably should have known that the handcuffs were too tight. Plaintiff's complaint does not allege, for example, that he complained to Defendants about any injuries or the tightness of the handcuffs, nor that he requested medical treatment during or after the arrest. The police report attached to the complaint makes no mention of Plaintiff complaining of the handcuffs being too tight or of requesting any medical attention related to this issue. *See* ECF No. 101 at 34. And although Plaintiff alleges that he suffered pain and bruising, there are no allegations in the complaint detailing the degree, extent or duration of Plaintiff's injuries at all. These allegations, without more, do not rise to the level of force necessary to sustain an excessive force claim. *See Ferraresso*, 646 F. Supp. 2d at 308 ("Without additional allegations of excessive force or blatant disregard for preexisting injuries, complaints, or requests for medical treatment, the use of handcuffs have been found to be reasonable.") (citations omitted). Thus, Plaintiff's excessive force/assault and battery claims in Count Three are dismissed, but the Court will allow Plaintiff leave to amend this claim.

    F.   Count Four: *Brady* Violation

In Count Four, Plaintiff alleges that Defendants suppressed evidence and interfered with the judicial proceedings by failing to consider his cross-complaint. As discussed above, the Court has determined that Defendants had no obligation to consider Plaintiff's cross-complaint once they possessed probable cause to arrest him. To the extent that Plaintiff seeks to invoke a separate *Brady* due process violation based on the same factual allegations, the Court dismisses this claim.

    *Brady* "established the affirmative duty of the prosecution to turn over exculpatory evidence to the defense." *Horn v. Stephenson*, 11 F.4th 163, 170 (2d Cir. 2021). In *Brady*, the U.S. Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* (quoting *Brady*,

373 U.S. at 87). This duty to disclose extends to police officers, who "satisfy their obligations under *Brady* when they turn over exculpatory evidence over to the prosecutors." *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992). To establish a *Brady* violation, "a defendant must show that: (1) the government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001).

Here, Plaintiff's *Brady* claim fails for at least two reasons. First, the alleged exculpatory evidence consisted of a cross-complaint authored by Plaintiff himself, setting forth his theory of the incident. It is well-settled that information known to the accused cannot be considered "suppressed" under *Brady*. *See United States v. de la Cruz*, 818 F. Supp. 3d 472, 480 (E.D.N.Y. 2026) ("Evidence is not considered to be 'suppressed' under *Brady* if the defendant knew or should have known of essential facts to take advantage of exculpatory evidence, because the Government has a duty to disclose only the information that is known to the prosecution but unknown to the defense.") (quoting *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982)); *see also United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988); *United States v. Esposito*, 834 F.2d 272, 275 (2d Cir. 1987).

Moreover, Plaintiff's allegation that Defendants failed to consider or credit his cross-complaint challenges the adequacy of their investigation, rather than the suppression of any exculpatory evidence. While *Brady* imposes an obligation on the Government to turn over favorable information, "it does not require the Government to seek out such information like a 'private investigator and valet . . . gathering evidence and delivering it to opposing counsel.'" *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) (quoting *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002)). As the Court concludes that the cross-complaint was

20

not "suppressed" for purposes of a *Brady* claim, it need not assess the remaining elements. Plaintiff's claim in Count Four based on a purported *Brady* violation is dismissed.

### G. Count Five:  Slander, Libel and Defamation

The Court next concludes that Plaintiff's defamation claim, stemming from Defendants' alleged circulation of the state court bond order notating "mental health [and] medication" concerns, must be dismissed.

"Defamation is comprised of the torts of libel and slander:  slander is oral defamation and libel is written defamation." *Skakel v. Grace,* 5 F. Supp. 3d 199, 206 (D. Conn. 2014).  "To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Gambardella v. Apple Health Care, Inc.,* 291 Conn. 620, 627–28 (2009).  Under Connecticut law, "[a] defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  *Id.* at 627. Generally, the statement in question must be false to be actionable as defamation.  *Cweklinsky v. Mobil Chemical Co.,* 267 Conn. 210, 228–29 (2004).  It must also convey an objective fact, rather than a mere opinion.  *NetScout Sys., Inc. v. Gartner, Inc.*, 334 Conn. 396, 410 (2020).

At the outset, the Court notes that the factual allegations raised in support of Plaintiff's defamation claim are vague and conclusory.  Plaintiff alleges, without sufficient details, that Defendants "spread" a bond order containing a state judge's notation of "mental health [and] medication" concerns among court officials, *see* ECF No. 1-1 ¶ 27; *id.* at 36, but he does not allege any facts to suggest that Defendants authored or were otherwise responsible for dissemination of the statement.  Nor does he name the state judge as a defendant in this action.  Moreover, the bond

21

order appears to reflect comments made by the state court in connection with Plaintiff's January 30, 2023, bond hearing and conditions of release. *Id.* at 36. Thus, to the extent Plaintiff's defamation claim is premised on Defendants' alleged dissemination of the bond order, it is dismissed.

To the extent Plaintiff bases his defamation claim on the affidavit submitted by Defendants to obtain an order of protection for victim of the assault, *id.* at 57–62, "[s]tatements made in connection with police investigations are generally not actionable because they are protected by qualified privilege." *Stonick v. Delvecchio*, 438 F. Supp. 3d 154, 171 (D. Conn. 2020); *see also Kelley v. City of Hamden*, No. 3:15-CV-977 (AWT), 2017 WL 3763839, at *3 (D. Conn. Aug. 30, 2017); *Gambardella*, 291 Conn. at 628 ("A defendant may shield himself from liability for defamation by asserting the defense that the communication is protected by a qualified privilege."). Under Connecticut law, "communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the controversy," and the privilege extends to "preparatory communications that may be directed to the goal of the proceeding." *Hopkins v. O'Connor*, 282 Conn. 821, 830–32, 837 (2007) (holding that statements in a written request by a police officer to take a person into custody for an emergency mental health examination warrants absolute immunity). Thus, Defendants' statements in the affidavit in support of the risk protection order are entitled to immunity under Connecticut law, and cannot support a claim for defamation.

Plaintiff's defamation claim is therefore dismissed in full.

H.  Count Six:  Intentional Infliction of Emotional Distress

Finally, the Court concludes that Plaintiff has not plausibly pleaded an IIED claim.

A plaintiff claiming IIED must show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his

conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Board of Education,* 254 Conn. 205, 210 (2000) (internal quotation marks and citation omitted). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 210–11.

Here, Plaintiff's IIED claim is premised on the alleged unlawful arrest, "escalation of baseless charges," Defendants' refusal to consider his cross-complaint, and the alleged "perpetuation" of false information about his health. *See* ECF No. 1-1 ¶ 28. The Court notes that these allegations are derivative of Plaintiff's false arrest, abuse of process and malicious prosecution claims. As the Court has determined that probable cause existed for Plaintiff's arrest, it cannot find that Defendants' conduct was so extreme and outrageous to permit Plaintiff's IIED claim to proceed. *See, e.g., Kilburn v. Vill. of Saranac Lake*, No. 08-CV-00367 (LEK) (DRH), 2010 WL 1235576, at *7 (N.D.N.Y. Mar. 31, 2010), *aff'd*, 413 F. App'x 362 (2d Cir. 2011); *Moreno v. City of New Haven Dep't of Police Serv.*, 604 F. Supp. 2d 364, 376 (D. Conn. 2009); *see also Castro v. Narcisse*, No. 3:12-CV-01535 (VLB), 2013 WL 5423689, at *10 (D. Conn. Sept. 26, 2013) (noting that "where an [IIED] claim is based on a plaintiff's arrest, and probable cause exists for that arrest, an intentional infliction of emotional distress claim may not stand: 'enforcement of the law can hardly be called conduct beyond the acceptable bounds of decent society. Subjecting a government official or employee to litigation for infliction of emotional distress arising from a valid arrest would be contrary to public policy and inhibit the enforcement of the law.'") (internal citation omitted). Thus, Plaintiff's IIED claim is dismissed.

I.    Fourteenth Amendment Conditions of Confinement Claim

Although Plaintiff does not explicitly list a claim for alleged unconstitutional conditions of confinement in his complaint, the complaint can fairly be characterized to raise such a claim. Thus, the Court analyzes whether such a claim could succeed, and concludes that it cannot based on the present allegations. The Court will, however, grant Plaintiff leave to amend with respect to this claim.

Plaintiff alleges that, during his detention between January 28 and 30, 2023, he was deprived of sleep due to the lights being left on in his cell, and only offered fast food which he could not eat because it causes him digestive issues. *Id.* ¶ 15. Plaintiff further alleges that these conditions of confinement were designed to coerce and punish him. *Id.*

A pretrial detainee's claim of unconstitutional conditions of confinement arises under the Fourteenth Amendment's due process clause. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). This type of claim requires a showing of two elements. First, the plaintiff must allege that the conditions under which he was held were objectively serious to rise to the level of a constitutional violation—*i.e.*, that, "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health . . . , which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks and citations omitted). The conditions "must be evaluated in light of contemporary standards of decency." *Id.* Second, the plaintiff must allege that the violation of his rights resulted from the defendant's deliberate indifference to the constitutional violation. *Id.* at 29. In Fourteenth Amendment cases, the plaintiff must show that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed ... even though the defendant[ ] knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

24

Whether Plaintiff has adequately alleged objectively serious conditions of confinement to rise to the level of a constitutional violation is a close question. Plaintiff alleges that he was deprived of sleep due to the constant illumination in his holding cell. For purposes of assessing a motion to dismiss, the Court concludes that Plaintiff has adequately alleged an objectively serious condition, albeit barely, because the Second Circuit has allowed claims related to lack of sleep to proceed. *See Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) ("[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate" the Constitution.); *Green v. Caron*, No. 3:22-CV-1397 (KAD), 2023 WL 1862950, at \*5 (D. Conn. Feb. 9, 2023) (allowing Eighth Amendment claim based on constant illumination in cell to proceed past initial review). That said, there are few details in the complaint about the nature of the lighting and how it impacted Plaintiff's ability to sleep, and Plaintiff may wish to add further allegations on this issue in any amended complaint. The Court notes, however, that Plaintiff's allegation that he was "offered only McDonald[']s food," which could not eat due to his digestive issues, does not rise to an objectively serious level. Plaintiff was offered at least some food during his detention, and it was his choice not to eat it. Thus, the alleged deprivation of food does not violate contemporary standards of decency. *Cf. Rush v. Astacio*, 159 F.3d 1348, \*2 (2d Cir. 1998) (summary order) (holding, pre-*Darnell*, that deprivation of food, "while unpleasant," did not violate the plaintiff's Fourteenth Amendment due process rights).

Even though he has (barely) cleared the threshold of alleging an objectively serious condition, Plaintiff has failed to allege that any constitutional violation resulted from Defendants' deliberate indifference, so the claim ultimately fails. He alleges that the conditions of confinement were "imposed (under Guerrera[']s lead ?) and carried out by other East Hartford Police Department officers." ECF No. 1-1 ¶ 15. This allegation admits that other unnamed officers (not

25

including Defendant Osterfin) "carried out" the allegedly unconstitutional conditions and is at least ambivalent, at best, about whether Defendant Guerrera directed or was otherwise involved the conditions. Accordingly, the allegation fails to establish that either named Defendant here acted intentionally to impose the condition or recklessly failed to act when he knew, or should have known, about the allegedly risky conditions.

Therefore, any Fourteenth Amendment conditions of confinement claim suggested by Plaintiff's allegations must be dismissed, though Plaintiff will be granted leave to amend this claim.

## IV.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In light of the Court's dismissal of all of Plaintiff's claims, it denies as moot Plaintiff's pending motion for summary judgment.

## V.    LEAVE TO AMEND

A district court ordinarily should not dismiss a *pro se* litigant's complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). But where the problem with a claim is "substantive," and "better pleading will not cure it," repleading will be futile. *Id.*

Here, the only claims that could potentially be cured with better pleading are Plaintiff's excessive force/assault and battery claim for excessively tight handcuffing, and Plaintiff's implicit Fourteenth Amendment conditions of confinement claim. The other claims suffer from substantive deficiencies that repleading will not fix.

26

Accordingly, Plaintiff may file an amended complaint alleging only his excessive force/assault and battery claim and his Fourteenth Amendment conditions of confinement claim by **July 16, 2026**.

## VI.  CONCLUSION

For the reasons described herein, Defendants' motion to dismiss, ECF No. 19, is **GRANTED** in full.  In light of this ruling, the Court denies as moot Plaintiff's motion for summary judgment, ECF No. 47.  Plaintiff may file an amended complaint alleging only his excessive force/assault and battery claim and his Fourteenth Amendment conditions of confinement claim by **July 16, 2026**.

**SO ORDERED** at Hartford, Connecticut, this 2nd day of July, 2026.

_/s/ Sarala V. Nagala_
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE